**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| TINA PETZAK | ) | 3:09-CV-185-ECR-RAM |
| Plaintiff, | ) | |
| vs. | ) | **Order** |
| BRAND SCAFFOLD SERVICES, LLC, BRAND SERVICES, LLC, and DOES I-X, | ) | |
| Defendants. | ) | |

Plaintiff Tina Petzak alleges that she was subjected to discrimination and harassment on the job because of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Nev. Rev. Stat. § 613.330. Plaintiff's retaliation claims have already been dismissed, pursuant to the stipulation of the parties. On November 20, 2009, Defendants Brand Scaffold Services, LLC, and Brand Services, LLC, ("Brand") filed a motion for summary judgment (#25).

The motion (#25) is ripe, and we now rule on it.

### I. Factual and Procedural Background

Plaintiff began employment with Brand, a company that rents, erects and dismantles scaffold platforms at construction sites, on October 8, 2007. Plaintiff was referred to Brand by her union, the United Brotherhood of Carpenters and Joiners, to Brand's facility at

the Tracy Clark Power Plant in Reno.  She was a fifty percent apprentice[1] at the time; she had never before worked on scaffolding at a job site, as opposed to a class setting.  Plaintiff worked at the Tracy Clark Power Plant for Brand until November 30, 2007, when she and several other employees were laid off.  She worked for Brand again from December 17, 2007, to December 20, 2007, at a different job in the Reno area, at the Montage.  Plaintiff was then laid off once more; she informed her supervisor that she intended to quit, but instead the supervisor laid her off, so that she could collect unemployment benefits.

Plaintiff initially filed this lawsuit in Nevada state court on March 16, 2009.  On April 10, 2009, Brand removed the action.  Plaintiff's Complaint (#1) asserts three claims for relief: (1) employment discrimination/disparate treatment on the basis of sex in violation of Title VII; (2) retaliation in violation of Title VII; and (3) unlawful employment practices in violation of Nevada statutory law, including both disparate treatment and retaliation.  Plaintiff's retaliation claims under both Title VII and Nevada statutory law, however, have been dismissed with prejudice (#17) pursuant to the stipulation of the parties (#16).

Brand filed the pending motion for summary judgment (#25) on November 20, 2009.  Plaintiff opposed (#26) the motion, and Brand replied (#27).

---

[1] Our record does not provide for the uninitiated an exact job description for a fifty percent apprentice. The details, however, are not important for the resolution of the present motion.

2

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered

3

by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

### III. Discussion

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1).  Nevada's anti-discrimination statutes are similar in many respects to Title VII, and Nevada state law claims of sex discrimination are generally subject to the same analytical framework as Title VII claims.  See NEV. REV. STAT. § 613.330; Pope v. Motel 6, 114 P.3d 277, 311 (Nev. 2005) (noting the similarity between Title VII and Nevada's anti-discrimination statutes, and that the Nevada Supreme Court has "previously looked to the federal courts for guidance in discrimination cases"); Apececke v. White Pine County, 615 P.2d 975, 977-78 (Nev. 1980) (applying burden-shifting test from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to discrimination claim brought under Nev. Rev. Stat. § 613.330).  The parties apparently agree that Plaintiff's state law claims should be treated the same as Plaintiff's Title VII claims, and we concur.

Plaintiff's claims are essentially two-fold.  First, she argues that Brand took several adverse employment actions against her because of her sex.  Second, she argues that she was subjected to a hostile work environment.  We will analyze each of these issues separately.

**A. Adverse Employment Actions**

Plaintiff's Complaint and briefing in opposition to the present motion are not models of clarity.  It appears, however, that Plaintiff claims Brand took some or all of the following adverse employment actions against her because of her sex: (1) Plaintiff was laid off from Tracy Clark Power Plant job site; (2) Plaintiff requested, but was denied overtime on several occasions; (3) Plaintiff was subjected to unsafe working conditions at the

5

Montage job site, forcing her to leave her employment.[2]  For the reasons stated below, Plaintiff has failed to produce sufficient evidence to support any of these claims.

In a Title VII discrimination case, a plaintiff may oppose a summary judgment motion brought by the defendant using the burden-shifting test established in McDonnell Douglas, or may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer. See Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007).  Here, Plaintiff has produced no evidence "which, if believed, proves the fact of discriminatory animus without inference or presumption," or which would establish a nexus between alleged discriminatory acts and alleged adverse employment decisions.  Vasquez v. County of L.A., 349 F.3d 634, 640 (9th Cir. 2003).  As such, she must proceed under the McDonnell Douglas framework.  Id.

To establish a prima facie case under the McDonnell Douglas framework a plaintiff must offer proof: "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a

---

[2] In the pending motion for summary judgment (#25), Brand also addresses under this rubric the alleged denial of a harness, which initially prevented Plaintiff from working high off the ground on the scaffolding at the Tracy Clark Power Plant job site.  Plaintiff, however, apparently does not assert that this could have constituted an adverse employment action by Brand.  (See P.'s Opp. at 6 (#26) (discussing alleged adverse employment actions, but not denial of a harness).)  Rather, matters relating to the denial of a harness appear to be part of Plaintiff's hostile work environment claim.  (Id. at 4.)

6

1 similarly situated employee who does not belong to the same
2 protected class as the plaintiff." <u>Cornwell v. Electra Cent. Credit</u>
3 <u>Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006)(citing <u>McDonnell Douglas</u>
4 <u>Corp.</u>, 411 U.S. at 802). Establishing a prima facie case creates a
5 presumption that the plaintiff's employer undertook the challenged
6 employment action for a discriminatory reason. <u>Id.</u>
7     Here, Plaintiff's claims each founder on the fourth requirement
8 for establishing a prima facie case; there is no evidence that
9 Plaintiff was treated differently than similarly situated male
10 employees. When Plaintiff was laid off on November 30, 2007, she
11 was only one of six employees who lost their jobs: the other five
12 were male. (<u>See</u> Aff. of Cheryle A. Kerksieck, D.'s Mot., Ex. 2
13 ("Kerksieck Aff.") ¶ 10 (#25-3).) Plaintiff's recollection,
14 expressed in her deposition, that only she and another employee, a
15 black male, were denied overtime, is not supported by the evidence.
16 (<u>See</u> Petzak Dep., D.'s Mot., Ex. 1 ("Petzak Dep.") at 116 (#25-2);
17 P.'s Opp. at 3 (#26).) Rather, it appears that she worked as much
18 overtime as her male co-workers or more. (Kerksieck Aff. ¶¶ 4-10
19 (#25-3).) Plaintiff testified in her deposition that the apparently
20 unsafe working conditions at the Montage job site were shared with
21 all employees, male and female. (Petzak Dep. at 134 (#25-3).) As
22 such, Plaintiff has failed to produce sufficient evidence for her
23 claims that Brand took any adverse employment actions against her on
24 the basis of her sex to survive summary judgment.
25     **B. Hostile Work Environment**
26     Plaintiff claims that she was subjected to a hostile work
27 environment by several of her co-workers. Under Title VII, "[t]he
28

7

phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (some internal quotation marks omitted), abrogated on other grounds by Burlington Indus. Inc. v. Ellerth, 524 U.S. 742 (1998).

To make a prima facie case of a hostile work environment, a plaintiff must show that "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995)). To be actionable under Title VII, the alleged hostile environment must be both "subjectively and objectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1110 (9th Cir. 2000)(internal quotation marks omitted). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." Craig, 496 F.3d at 1055. The Supreme Court has emphasized that "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Accordingly, "simple teasing, offhand comments, and

8

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)).

There is some evidence that Plaintiff was subjected to a certain amount of unwelcome verbal and physical conduct of a sexual nature on the job. A co-worker, identified only as "J.D.," appears to have been the primary offender in this regard: he repeatedly used vulgar, demeaning, and sexual language in Plaintiff's presence, sometimes while addressing her; on one occasion he put his arm around Plaintiff in a manner that was arguably sexual in nature. (See Petzak Dep. at 103-106 (#25-1).) Another co-worker, Gary Cavalin, allegedly made an inappropriate remark to Plaintiff regarding whether a harness would fit over her breasts. (Id. at 91.)

Plaintiff also makes much of certain other unpleasant aspects of her employment, especially allegedly unsafe working conditions. Regarding the Tracy Clark Power Plant job site, she alleges that Mr. Cavalin denied her a harness to allow her to safely work up on the scaffolding, sent her up on the scaffolding nonetheless, and then berated her for performing an "illegal function." (See P.'s Opp. at 2 (#26).) Plaintiff alleges that at the Montage job site she was improperly required to pass planks down multiple stories in icy conditions, a practice referred to by the parties as "double passing". (See Petzak Dep. at 134-136 (#25-2).) In addition, Plaintiff complains that she was subjected to ridicule by co-workers, who were taking bets regarding how long she would last at

9

the Montage job site.  (See P.'s Opp. at 5 (#26).)  Even assuming these allegations to be true, however, there is no evidence showing these unpleasant aspects of her employment were in any way related to her gender.  As such, though these allegations are properly considered as part of the "totality of the circumstances," they do not weigh heavily in favor of finding Plaintiff was subjected to a hostile work environment because of discrimination on the basis of sex.

Furthermore, Plaintiff's evidence relating to her co-workers J.D. and Mr. Cavalin does not, even taking reasonable inferences in her favor, demonstrate she was subjected to "extreme" conduct, in the meaning of Faragher.  Plaintiff complains of only a single off-color comment by Mr. Cavalin, and the alleged denial of a harness by him was immediately remedied when Plaintiff complained to the shop steward on the job.  (See P.'s Opp. at 2 (#26); Petzak Dep. at 94 (#25-1).)  Plaintiff was only subjected to J.D.'s inappropriate behavior for approximately five days, spread over two weeks; when she complained of his behavior, and requested that she not be assigned to work with J.D. again, Brand immediately accommodated her request.  (Petzak Dep. at 88 (#25-1).)  Though J.D. apparently learned of Plaintiff's request not to work with him and confronted her about it, Plaintiff makes no allegation that she was subjected to any further unwanted verbal or physical conduct of a sexual nature by J.D. after her reassignment.

In short, though Plaintiff did endure some offensive behavior, she has failed to produce sufficient evidence to support her claim that the conduct was so severe or pervasive as to amount to an

10

alteration of the conditions of her employment and create an abusive working environment. The authority cited by Plaintiff in support of her opposition is not to the contrary. In <u>Draper v. Coeur Rochester, Inc.</u>, 147 F.3d 1104 (9th Cir. 1998), the plaintiff was subjected to offensive comments and discriminatory treatment by a supervisor for a period of several years, and her complaints to management fell on deaf ears. <u>See</u> <u>id.</u> at 1106-1107. In <u>Nichols v. Azteca Restaurant Enterprises, Inc.</u>, 256 F.3d 864 (9th Cir. 2001), the plaintiff was subjected to even more severe abuse, a "relentless campaign of insults, name-calling, and vulgarities," throughout the plaintiff's nearly four-year term of employment. <u>Id.</u> at 870. Here, the evidence demonstrates only that Plaintiff was subjected to some degree of offensive conduct for a matter of days, and her supervisors took action to remedy the problem when she complained.

In short, as a matter of law, the conduct at issue here is not sufficiently severe or pervasive to alter the conditions of Plaintiff's working environment. As such, Plaintiff's claims that she was subjected to a hostile work environment in violation of Title VII and Nevada statutory law fail.

### IV. Conclusion

Plaintiff has not produced any evidence that she was treated differently from her male co-workers. Furthermore, though she was subjected to several instances of offensive conduct by her co-workers, the alleged conduct was not so extreme as to support a hostile work environment claim. As such, Plaintiff has failed to raise a triable issue of fact as to whether she was subjected to

11

discrimination on the basis of sex in violation of Title VII or Nevada statutory law.

**IT IS, THEREFORE, HEREBY ORDERED** that Brand's motion for summary judgment (#25) is **GRANTED**.

The Clerk shall enter judgment accordingly.

DATED: July 15, 2010.

                                        _Edward C. Reed_
                                        UNITED STATES DISTRICT JUDGE